UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE AFFINITY GROUP, INC. dba EMERALD PUBLICATIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>BALSER WEALTH MANAGEMENT, LLC, an Ohio Limited Liability Company; ROGER BALSER, an individual, and DOES 1-10,<br><br>Defendants. | CASE NO. 05cv1555 WQH (LSP)<br><br>**ORDER**<br><br>(Doc. # 10) |

HAYES, Judge:

The matter before the Court is Plaintiff's Motion for Default Judgment. (Doc. # 10.)

**I.   Background**

On August 4, 2005, Plaintiff instituted the above-styled trademark and copyright infringement action. (Doc. # 1.) On October 26, 2005, Plaintiff filed an Affidavit of Process Server indicating that Defendants were personally served by leaving the Complaint and Summons with Defendant Roger Balser in Ohio on September 26, 2005. (Doc. # 3.) On March 29, 2006, at the request of Plaintiff, the Clerk entered Default as to Defendants. (Doc. # 6.) On January 24, 2007, Plaintiff filed its Motion for Default Judgment (Doc. # 10) arguing that, as a matter of law, judgment should be entered awarding Plaintiff the sum of $13,292 (or $21,392 if the Court awards treble damages).

**II.   Allegations of the Complaint**

Plaintiff is the owner of United States Trademark Registration No. 75/644,168,

1  "Passport to Retirement," for use in conjunction with seminars and workshops to the public
2  in the areas of retirement planning, investments, tax strategies, and estate planning. (Compl.
3  ¶ 11, Ex. A.) Plaintiff has used its "Passport to Retirement" mark continuously since 1999, and
4  has sold products under the mark nationwide, including in the State of Ohio. (Compl. ¶ 12.)

5  Defendant Roger Balser, and his alter ego Defendant Balser Wealth Management, have
6  infringed Plaintiff's mark by advertising and using the name "Passport to Retirement" in
7  connection with retirement seminars and related written materials. (Compl. ¶¶ 13, 33.)
8  Defendants' use of the name is without Plaintiff's permission or authority, with actual and
9  constructive notice of Plaintiff's federal trademark registration rights, and is likely to cause
10 confusion, to cause mistake and/or to deceive. (Compl. ¶¶ 14-15.)

11 **III.    Motion for Default Judgment**
12     **A.    Legal Standards**
13 Federal Rule of Civil Procedure 55(b) provides that judgment by default may be entered
14 by the Court. A district court may consider the following factors in exercising its discretion
15 to enter a default judgment:

16 > (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at
17 > stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy
18 > underlying the Federal Rules of Civil Procedure favoring decision on the merits.

19 *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

20 "In applying this discretionary standard, default judgments are more often granted than
21 denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal.
22 2003). "The general rule of law is that upon default the factual allegations of the complaint,
23 except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v.
24 Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quotation omitted). "Plaintiff is required
25 to prove all damages sought in the complaint. In addition, '[a] judgment by default shall not
26 be different in kind [or] exceed in amount that prayed for in the [complaint].' In determining
27 damages, a court can rely on the declarations submitted by the plaintiff or order a full
28 evidentiary hearing. Plaintiff's burden in 'proving up' damages is relatively lenient. If

1  proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is
2  established and plaintiff need prove only that the compensation sought relates to the damages
3  that naturally flow from the injuries pled." *Phillip Morris USA*, 219 F.R.D. at 498 (quoting
4  Fed. R. Civ. P. 54(c)) (citing *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir.
5  1992)).

**B.    Discussion**

   **1.    Default Judgment**

In order to determine whether default judgment is appropriate, the Court considers each of the *Eitel* factors, set out above. The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). "[S]ince, by defaulting, Defendant is deemed to have admitted the truth of [Plaintiffs'] averments," Plaintiff will likely suffer prejudice because Plaintiff "would be without other recourse for recovery." *Philip Morris USA*, 219 F.R.D. at 499. Therefore, this factor favors entry of judgment against the Defendant.

The second and third *Eitel* factors (i.e., the merits of plaintiff's substantive claim and the sufficiency of the complaint) require that a plaintiff "state a claim on which the [plaintiff] may recover." *Id.* (internal quotation marks omitted). The elements necessary to establish trademark infringement and unfair competition claims are identical. *See Brookfield Comm., Inc. v. West Coast Enter. Corp.*, 174 F.3d 1036, 1046 n.6, 1047 n.8 (9th Cir. 1999). Federal trademark infringement claims under § 32 of the Lanham Act apply to registered marks, while unfair competition claims under § 43(a) of the Lanham Act apply to both registered and unregistered marks and protect against a wider range of practices. *See id.*; *see also* 15 U.S.C. § 1114; 15 U.S.C. § 1125(a)(1). In both cases, the plaintiff must "prove the existence of a trademark and the subsequent use by another in a manner likely to create consumer confusion." *Comedy III Prod., Inc. v. New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000). As set out above, the factual allegations of the Complaint sufficiently allege the existence of a trademark and the subsequent use by Defendants in a manner likely to create consumer confusion. (Compl. ¶¶ 11-17.) Therefore, the Complaint states a claim for trademark infringement and

unfair competition.

The elements of a copyright infringement claim are "(1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing, *inter alia*, 17 U.S.C. § 501(a)). Plaintiff adequately alleges both of these elements. (Compl. ¶¶ 23-27.) Therefore, the Complaint also states a claim for copyright infringement. The second and third *Eitel* factors favor entry of default judgment against Defendants.

The fourth *Eitel* factor considers the amount at stake in relation to the seriousness of Defendant's conduct. *See Eitel*, 782 F.2d at 1471-72. Plaintiff seeks damages in the amount of $4,050, as detailed below. Given the allegations of willful infringement, as well as Defendants' failure to comply with the judicial process or to participate in this litigation, the Court finds that this factor likewise favors entry of default judgment against Defendants. *Cf. Phillip Morris USA*, 219 F.R.D. at 500 ("Given Defendant's infringing importation of large, commercial quantities of counterfeit Marlboro cigarettes, the likelihood that its conduct would cause confusion or mistake or otherwise deceive customers, and its failure to comply with the judicial process or to participate in any way in the present litigation, the Defendant has engaged in willful use of the counterfeit mark, which justifies the imposition of a substantial monetary award.") (awarding $2,000,000 in damages in trademark infringement default judgment).

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. *See Eitel*, 782 F.2d at 1471-72. In this case, there is little possibility of dispute because the Court takes all factual allegations of the Complaint as true based on the entry of default. *See TeleVideo Sys., Inc.*, 826 F.2d at 917-18. Additionally, Defendant has not made any attempt to challenge the Complaint or appear in the case. Thus, this factor favors the entry of default judgment.

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their

1 objections before a final judgment is rendered. *See Mullane v. Central Hanover Bank & Trust
2 Co.*, 339 U.S. 306, 314 (1950). As set out in the Declarations of Paul Peterson and Michael
3 Hoisington, submitted with the Motion for Default Judgment, Plaintiff made numerous
4 attempts to contact Defendants. Between March 16, 2005 and August 12, 2005, Plaintiff or
5 Plaintiff's attorney mailed four letters concerning the subject of this suit to Balser at the
6 address where he later would be personally served. (Hoisington Decl., Exs. B-D.) Plaintiff
7 received no response. (Peterson Decl. ¶ 3.) In May of 2005, Plaintiff's counsel spoke with
8 Balser on the telephone, during which time Balser "expressed his distaste for lawyers, was very
9 rude, and refused to discuss the issues." (Hoisington Decl. ¶ 9.) Balser also stated that
10 Plaintiff "would never get a dime from him" because "he was protected by his LLC."
11 (Hoisington Decl. ¶ 9.) After Plaintiff served Defendants via personal service on September
12 26, 2005, Defendants' website content was removed and the telephone number was
13 disconnected. (Peterson Decl. ¶¶ 3-5.) On March 15, 2006, Plaintiff sent Balser a certified
14 letter stating that Plaintiff was seeking default in this Court. (Peterson Decl. ¶ 8.) The letter
15 was delivered, but Plaintiff did not receive a response. (Peterson Decl. ¶ 8.) On January 23,
16 2007, Plaintiff served the Motion for Default Judgment on Balser at his last known address and
17 also e-mailed a copy to his last known e-mail address. (Hoisington Decl. ¶ 5.) Given the
18 above-stated facts, the Court finds the possibility of excusable neglect to be remote.
19 Accordingly, the sixth *Eitel* factor favors the entry of default judgment. *See Phillip Morris
20 USA*, 219 F.R.D. at 500-01.

21 The seventh *Eitel* factor is "the strong policy underlying the Federal Rules of Civil
22 Procedure favoring decision on the merits." *Eitel*, 782 F.2d at 1472. However, "the mere
23 existence of [Federal Rule of Civil Procedure] 55(b) indicates that the seventh *Eitel* factor is
24 not alone dispositive." *Id.* at 501 (citing *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,
25 1177 (C.D. Cal. 2002)). "Defendant's failure to answer [Plaintiff's] Complaint makes a
26 decision on the merits impractical, if not impossible. Under FRCP 55(a), termination of a case
27 before hearing the merits is allowed whenever a defendant fails to defend an action." *PepsiCo
28 Inc.*, 238 F. Supp. 2d at 1177. Therefore, the seventh *Eitel* factor does not preclude the Court

from entering default judgment against Defendants. *See id.*; *see also Philip Morris USA, Inc.*, 219 F.R.D. at 501.

Upon considering all of the *Eitel* factors, the Court finds that default judgment should be entered in this case.

### 2. Remedies

As a threshold issue, the remedies sought by "[a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]." Fed. R. Civ. P. 54(c). In the Motion for Default Judgment, Plaintiff seeks the same injunctive relief sought in the Complaint, a smaller amount of money damages than what was sought in the Complaint, as well as attorney's fees and costs, which were also sought in the Complaint.

### a. Injunctive Relief

The Court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a); *see also* 15 U.S.C. § 1116(a) ("The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . ."). "As a general rule, a permanent injunction will be granted when liability has been established and *there is a threat of continuing violations*." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (emphasis added) (citation omitted); *see also Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994) ("[I]t is appropriate to permanently enjoin . . . future infringement" where "'there has been a history of continuing infringement and a significant threat of future infringement remains.'") (quoting *Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990)).

Here, Plaintiff seeks a permanent injunction prohibiting Defendants from infringing Plaintiff's trademark and copyrighted seminar materials. Plaintiff has alleged that, with knowledge of Plaintiff's rights and without permission, Defendants willfully infringed Plaintiff's rights by using the "Passport to Retirement" trademark and copyrighted seminar

1  materials. However, as Plaintiff acknowledges in its brief: "Plaintiff has been unable to
2  determine whether or not Defendants are continuing their use of Plaintiff's trademark and
3  copyrighted materials." (Mem. Supp. Mot. Default J. at 3.) Plaintiff also has not shown any
4  threat of future infringement, absent the instances of past infringement alleged in the
5  Complaint. Indeed, based upon Plaintiff's evidence, it appears Balser has abandoned his
6  business, "Balser Wealth Management." Given the lack of showing of "a threat of continuing
7  violations," *MAI Sys. Corp.*, 991 F.2d at 520, the Court denies Plaintiff's request for a
8  permanent injunction.

### b.    Damages

10  A "copyright owner is entitled to recover the actual damages suffered by him or her as
11  a result of the infringement." 17 U.S.C. § 504(a); *see also* 15 U.S.C. § 1117(a) (for a willful
12  violation of a trademark, a plaintiff is entitled to recover, *inter alia*, "defendant's profits" and
13  "any damages sustained by plaintiff"). As set out above, once a court determines default
14  judgment is appropriate, plaintiff has a "relatively lenient" burden to prove damages. *Phillip*
15  *Morris USA*, 219 F.R.D. at 498. This burden may be discharged by submitting declarations.
16  *See id.*

17  Here, Plaintiff seeks its profit on a licensing fee for a one-year license for the use of the
18  "Passport to Retirement" trademark and copyrighted materials ($1,650), the profit on the
19  average purchase of audience seminar materials ($900), and one-half of its "in-house costs to
20  try to settle the matter with Defendants" ($1,500). (Mem. Supp. Mot. Default J. at 4.) Plaintiff
21  adequately supports this request for $4,050 in damages with evidence. (Peterson Decl. ¶¶ 8-9.)
22  Therefore, the Court grants Plaintiff's request for $4,050 in damages.

23  In its brief, Plaintiff quotes 15 U.S.C. § 1117(b) (providing for treble damages in
24  counterfeiting cases) and states that "[i]f the court determines that treble damages are
25  warranted, this [damages] amount increases to $12,150.00." (Mem. Supp. Mot. Default J. at
26  4.) Plaintiff offers no further discussion of the issue of treble damages. To the extent this is
27  a request for treble damages, the Court denies it. Plaintiff fails to meet its burden of showing
28  that this is a counterfeiting case pursuant to 15 U.S.C. § 1114(1)(a) and § 1116(d).

Specifically, the Complaint does not specifically allege that Defendants attempted to convince consumers that its materials were in fact produced by Plaintiff. *Cf. U.S. v. Petrosian*, 126 F.3d 1232, 1233 (9th Cir. 1997) ("The term 'counterfeit mark' includes genuine trademarks, affixed to packaging containing products not made by, but *sold as products of the owner of the registered trademark*.") (emphasis added). Instead, the Complaint alleges that Defendants copied Plaintiff's "Passport to Retirement" mark and "significant portions" of copyrighted text, and attempted to sell the materials as if they were wholly produced by Defendants. (Compl. ¶ 13, 26.)

### c. Attorney's Fees and Costs

"In any civil action under this title, the court in its discretion may allow the recovery of full costs. . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Here, Plaintiff seeks attorney's fees of $8,798 and additional costs of $444, for a total of $9,242. These amounts are adequately proven by the Hoisington Declaration. (Hoisington Decl. at 2-4.) Given the allegations of willful infringement and Balser's refusal to meaningfully communicate with Plaintiff regarding this lawsuit, the Court grants Plaintiff's request for attorney's fees and costs in the amount of $9,242. *See Philip Morris USA, Inc.*, 219 F.R.D. at 502 (granting attorney's fees and costs because "Plaintiff alleges Defendant's conduct was willful and deliberate and that Defendant refused to meaningfully communicate with Plaintiff regarding this lawsuit").

## IV. Conclusion

Plaintiff's Motion for Default Judgment (Doc. # 10) is GRANTED in part and DENIED in part, as follows. Default Judgment shall be entered in favor of Plaintiff and against Defendants. Plaintiff shall be awarded damages in the amount of $4,050, and attorney's fees and costs in the amount of $9,242. Plaintiff's requests for injunctive relief and treble damages are denied.

DATED: April 10, 2007

**WILLIAM Q. HAYES**
United States District Judge